* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser and the briefs, oral arguments, and proposed opinion and awards before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses Deputy Commissioner Houser's denial of benefits and enters the following Opinion and Award.
 * * * * * * * * * * * MOTION TO RECEIVE NEW EVIDENCE
By motion dated August 13, 2004, plaintiff has moved the Commission to receive into evidence a letter from defendant-employer dated June 25, 2001, concerning "loss wages" related to plaintiff's alleged May 24, 2001, injury by accident. Plaintiff acknowledges that defendants are not willing to stipulate to the authenticity of the letter, and although plaintiff asserts that the letter was not reasonably discoverable by due diligence previously, plaintiff has failed to justify that assertion. Because plaintiff has failed to justify sufficiently the admission of new evidence at this late point in the proceedings of this case, the Full Commission, in its discretion and pursuant to Rule 701(6) of the Workers' Compensation Rules of the North Carolina Industrial Commission, declines to admit the additional evidence proffered by plaintiff. Accordingly, plaintiff's Motion to Receive New Evidence is hereby DENIED.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement, and were admitted into the record and marked as Stipulated Exhibit (1):
 STIPULATIONS
1. Plaintiff's alleged date of injury is May 24, 2001. Plaintiff continued to work full duty until October 16, 2001. Plaintiff was approved for State Disability Retirement Benefits on July 1, 2002.
2. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and of the subject matter.
3. All parties have been correctly designated, and there is no question as to non-joinder or mis-joinder of parties.
4. On the relevant dates herein, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. On the relevant dates herein, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
6. On the relevant dates herein, Compensation Claims Solutions was the compensation carrier on the risk.
7. Pursuant to an Industrial Commission Form 22 Wage Chart completed by defendants, plaintiff's average weekly wage on the relevant dates was $994.10, which would yield the maximum compensation rate for the year 2001 of $620.00.
8. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms, which was admitted into the record and marked as Stipulated Exhibit (3);
 c. The Transcript of the August 16, 2002, Deposition of Dr. Michael A. Tyner, which was admitted into the record and marked as Stipulated Exhibit (4); and,
 d. The Affidavit of Lieutenant Richard Sampson, which was admitted into the record and marked as Stipulated Exhibit (5).
9. The issues to be determined are as follows:
a. whether plaintiff sustained an injury by accident;
 b. whether plaintiff is entitled to any benefits under the Act; and,
 c. whether defendants properly denied the claim, or denied it without a reasonable investigation or defended it without reasonable grounds.
 * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record and the reasonable inferences flowing therefrom, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was forty-one years of age. Plaintiff is a high school graduate, and is also a graduate of Shaw University, having majored in physical education. At the time of the incident giving rise to this claim, plaintiff had been employed by defendant-employer for approximately fifteen years.
2. Prior to the date of the incident at issue, plaintiff had undergone a hernia surgery performed by Dr. Michael Tyner on February 16, 2001. The surgery performed by Dr. Tyner was to reduce plaintiff's hiatal hernia, repair her diaphragm, and perform a fundoplication in which a wrap is created around the esophagus using some of the stomach to prevent acid reflux. Following a period of recovery, plaintiff returned to full duty work with defendant-employer as a Deputy Sheriff on March 16, 2001.
3. As a Deputy Sheriff, plaintiff's duties required her to serve and process criminal summonses, patrol assigned areas, investigate suspicious conditions and complaints, and make arrests. Additionally, in that capacity, plaintiff was expected to work in an environment that involved risks and exposure to potentially dangerous situations. While working in the field, plaintiff normally worked ten hour shifts, and while serving warrants in the office or performing administrative duties, she normally worked eight hours per day. Like all members of the warrant platoon, plaintiff rotated between working in the field and working in the office. During her employment with defendant-employer, plaintiff has responded to a variety of law enforcement calls requiring a variety of responses. Plaintiff has also issued numerous citations, arrested and chased numerous suspects, been involved in scenarios where she was forced to draw her weapon, transported prisoners, and had to physically fight suspects.
4. On May 24, 2001, plaintiff was attempting to serve a warrant on an adult male subject. When plaintiff arrived at the location to serve the suspect, the suspect indicated that he was not going to go to jail, and the suspect's mother also advised plaintiff that if she were going to arrest the suspect, she would also have to arrest the suspect's mother. Because of these circumstances, plaintiff requested a check-in or backup for assistance in serving the warrant. In response to plaintiff's backup call, Deputy Joel Goodwin arrived at the scene. After Deputy Goodwin's arrival at the scene, plaintiff attempted to handcuff the suspect, but the suspect resisted, leading to a prolonged physical altercation. As the result of the altercation, plaintiff sustained injuries to her shoulder and stomach. Eventually, and after a considerable delay not anticipated by plaintiff, Deputy Goodwin interceded in the altercation and, with plaintiff's help, was able to apply the handcuffs to the suspect. Plaintiff informed her superiors of the altercation and her injuries immediately following the incident.
5. To the extent that Deputy Goodwin's testimony concerning the events of May 24, 2001, differs from that of plaintiff's, and in particular to the extent that Deputy Goodwin's testimony minimizes or dismisses the physical altercation between plaintiff and the suspect and Deputy Goodwin's own delay in interceding therein, the Full Commission, based upon the totality of the credible evidence of record, gives greater weight to the testimony of plaintiff regarding the events that took place on May 24, 2001, as opposed to the testimony of Deputy Goodwin.
6. The Full Commission finds that the injuries sustained by plaintiff on May 24, 2001, were causally related to the unanticipated delay between Deputy Goodwin's arrival at the suspect's location as check-in or backup and his subsequent and belated intercession in the physical altercation between plaintiff and the suspect. The Full Commission further finds that Deputy Goodman's unanticipated delay in interceding was an unlooked for and untoward event which was not expected or designed by plaintiff.
7. On May 25, 2001, upon referral by defendants, plaintiff was examined at Concentra Medical Centers. At that time plaintiff was experiencing abdominal discomfort and had right arm symptoms requiring an evaluation. Plaintiff reported that her abdominal region had become very sore overnight following the altercation incident. From this initial medical examination, plaintiff was prescribed medications and was released to return to work with restrictions to avoid duties requiring direct physical contact. On May 29, 2001, plaintiff returned to Concentra, where she was examined by Abe McCoy, PA-C. Following an examination, PA McCoy opined that plaintiff had sustained a right shoulder sprain and an abdominal strain, both of which were resolving. Again, plaintiff was released to return to work, on this occasion with no restrictions. On May 31, 2001, plaintiff again returned to Concentra, and was examined by Dr. Michael Landolf, who opined that her abdominal strain had resolved and that she could perform unrestricted work. Despite these findings, plaintiff testified, and the Full Commission finds as fact, that plaintiff's abdominal swelling and symptoms had not resolved at the time she was released by medical providers associated with Concentra.
8. On June 26, 2001, plaintiff was examined at the Rex Hospital Emergency Room and reported experiencing abdominal pain, indigestion, and nausea in her upper abdomen and lower chest for the previous two days. For her symptoms, plaintiff was prescribed a mixture of gastrointestinal medications and a shot for the pain, and was referred to her family physician.
9. Because of her ongoing symptoms, in October 2001 plaintiff again sought treatment from Dr. Michael Tyner, who had performed her prior hernia operation. At the October 2001 appointment, plaintiff reported experiencing chest pain and increased difficulty swallowing (dysphagia). Additionally, plaintiff informed Dr. Tyner about the altercation incident of May 24, 2001, and that immediately thereafter, she had begun to experience symptoms similar to those she had experienced with her prior hernia. An air contrast upper GI performed on October 5, 2001, revealed a moderate-sized sliding of her hiatal hernia, a recurrence of herniation, or an opening in the hiatus with fundoplication above the recurrence of herniation. Upon further examination, Dr. Tyner found that the previous hiatal hernia repair of February 16, 2001, had been disrupted. In essence, part of the wrap that was put around plaintiff's esophagus during the February procedure had moved into her lower chest.
10. As a result of his findings in October 2001, Dr. Tyner determined that a surgical repair of plaintiff's hernia was medically necessary. In this procedure, which was performed on October 18, 2001, Dr. Tyner again put a wrap in place around plaintiff's esophagus and, this time, used a patch on her diaphragm.
11. Since October 17, 2001, the day prior to her surgery, plaintiff has not returned to work for defendant-employer or for any other employer.
12. Between the time of plaintiff's release to return to work following her initial hernia repair surgery on February 16, 2001, and the May 24, 2001, work-related incident giving rise to this claim, plaintiff sustained no significant trauma or strain to the site of her surgical repair. Additionally, the credible evidence of record establishes that, subsequent to the May 24, 2001, incident and prior to the time of the examination by Dr. Tyner in October 2001, plaintiff sustained no significant strain or disruption of her hiatal hernia repair and fundoplication.
13. On December 1, 2001, Dr. Tyner assigned plaintiff temporary work restrictions of sedentary work only, with no running, lifting, or exertion. Later in December 2001, plaintiff complained of difficulty swallowing. Diagnostic procedures revealed that plaintiff again had esophagitis or recurrent reflux. On January 17, 2002, Dr. Tyner again performed surgery on plaintiff, and discovered additional potential problems with her fundoplication in that the wrap may not have been 360 degrees as was originally intended.
14. On January 23, 2002, Dr. Tyner wrote plaintiff a note medically excusing plaintiff from work for four (4) months due to her having had open abdominal surgery and a re-repair of her diaphragm. Through April 2002, plaintiff continued treatments with Dr. Tyner, and experienced pain associated with the site of her incision. On May 16, 2002, plaintiff underwent an exploration of her wound, which included an excision of the retained nylon suture and an excision of seroma versus wound hematoma. On May 19, 2002, plaintiff sought treatment at Rex Hospital and reported experiencing abdominal pain, vomiting, diarrhea, and migraine headache.
15. On May 29, 2002, plaintiff entered a work hardening program recommended by Dr. Tyner for the purpose of returning her to a position where she could perform adequately in most work environments.
16. In June 2002, plaintiff presented again to Dr. Tyner with reflux problems, apparently because the wrap was not working properly.
17. Dr. Tyner testified that in his opinion, plaintiff's symptoms and the recurrence of her hernia in October 2001 were more likely than not caused by the work-related altercation incident of May 24, 2001. Dr. Tyner opined that plaintiff's diaphragm, stomach, and the hiatal hernia repair were damaged as a result of the incident at work on May 24, 2001. In explaining his causation opinion, Dr. Tyner testified that his opinion was in part based upon what he personally observed during surgery he performed October 18, 2001, and that his findings during the actual surgical examination were consistent with the work-related altercation injury plaintiff sustained on May 24, 2001.
18. Dr. Tyner further testified that, in his opinion, the treatment that he had been giving plaintiff following the October 18, 2001, surgery was reasonable and necessary as a result of the on-the-job altercation in May of 2001.
19. Dr. Tyner stated that, in his opinion, plaintiff had been temporarily totally disabled from her regular job duties as a Deputy Sheriff and as a Detention Officer during the time that he had been treating her since October of 2001. He also opined that plaintiff had not yet reached maximum medical improvement, and that it was premature to assign permanent work restrictions. Dr. Tyner suggested that plaintiff will need further physical therapy or a work hardening program to be able to return to the work she has previously performed.
20. Dr. Carl J. Westcott testified for the defendants as a board certified general surgeon. He stated that he reviewed the medical records of plaintiff and generated a report. Dr. Westcott has never met or treated plaintiff himself.
21. Dr. Westcott testified that the surgery performed on plaintiff on January 17, 2002, in which the fundoplication was tightened, and the surgery performed on May 16, 2002, in which Dr. Tyner was exploring a foreign body reaction, were completely unrelated to the injury that occurred in May of 2001. Furthermore, the surgery performed on November 19, 2002, in which more esophagus was created for plaintiff, was, according to Dr. Westcott, unrelated to the incident at work in May of 2001. Dr. Westcott stated that, in his opinion, none of the care provided by Dr. Tyner from October of 2001 to the present time was directly related to the on-the-job altercation that occurred in May of 2001.
22. However, Dr. Westcott admitted that the altercation in May of 2001 that occurred while plaintiff was at work could have been a contributing factor to the breakdown of her fundoplication. He further stated that he did not believe there to have been any failure to meet the standard of care by Dr. Tyner, his assisting surgeon, or the radiologist in this case. He agreed that Dr. Tyner and Dr. Farrell, a doctor plaintiff saw at the UNC School of Medicine, would be in a better position to give medical opinions about plaintiff than he would in that they had both seen the patient when he had not.
23. Dr. Timothy Farrell was deposed at the request of the defendants and is board certified as a surgeon. Dr. Farrell examined plaintiff and reviewed the medical records of Dr. Tyner provided by the defendant. Dr. Farrell testified that he read Dr. Tyner's notes to mean that plaintiff developed symptoms of regurgitation and trouble swallowing immediately after the altercation on-the-job. He also stated that, in his own opinion, he did not see any other event besides this altercation that could have been implicated as a cause of her reherniation.
24. Dr. Farrell testified that, in his opinion, and based upon all the medical records, the deposition of Dr. Tyner, and his examination of plaintiff, the altercation of May 24, 2001, was the most likely cause of the disruption of the hiatal hernia repair that had been performed in February of 2001.
25. The Full Commission finds that the opinions of Drs. Tyner and Farrell are entitled to greater weight than the opinions of Dr. Westcott. Drs. Tyner and Farrell actually examined and treated plaintiff. Dr. Westcott simply reviewed records at the request of defendants and never actually conducted an examination of plaintiff.
26. The Full Commission finds, based on the greater weight of evidence, that on May 24, 2001, while in the course and scope of her employment as a Deputy Sheriff effecting arrest of a subject who was resisting arrest, plaintiff suffered an injury substantially aggravating her pre-existing, non-disabling fundoplication and hiatal hernia repair.
27. Plaintiff's surgery in October of 2001 and the surgical procedures performed thereafter were a medically necessary result of plaintiff's May 24, 2001, injury.
28. As a result of plaintiff's injury by accident on May 24, 2001, she became temporarily totally disabled beginning on October 17, 2001.
29. The medical evidence in this matter establishes that this claim involves complicated questions of medical causation. As such, defendants' actions in this mater, including their investigation of the claim, were reasonable and not indicative of stubborn unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 24, 2001, plaintiff sustained an injury arising out of and in the course of her employment when her pre-existing, non-disabling, fundoplication and hiatal hernia repair was torn and significantly disrupted during a physical altercation with a subject resisting arrest. Because that physical altercation could have been minimized or avoided entirely, but for the unanticipated delay of Deputy Goodman in interceding in the altercation despite having already arrived on the scene as check-in or backup, Deputy Goodman's delay constituted "`an unlooked for and untoward event which is not expected or designed by the person who suffers the injury.'" Ferreyra v. CumberlandCounty, ___ N.C. App. ___, ___, 623 S.E.2d 825, 827 (2006) (citation omitted). It follows that, on May 24, 2001, plaintiff suffered a compensable injury by accident. N.C. Gen. Stat. § 97-2
(6).
2. As a result of her injury by accident on May 24, 2001, plaintiff has been totally disabled from all employment since October 17, 2001. N.C. Gen. Stat. § 97-29.
3. Defendants are obligated to provide to plaintiff such medical treatment as is reasonably required as a result of plaintiff's injury by accident to effect a cure, give relief, or lessen plaintiff's disability. Dr. Michael Tyner is designated as plaintiff's authorized treating physician for the direction and management of her medical care. N.C. Gen. Stat. § 97-25.
4. Because defendants' actions in this mater, including the investigation of the claim, were reasonable and not indicative of stubborn unfounded litigiousness, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee noted below, defendants shall pay plaintiff total disability benefits in the amount of $620.00 per week beginning October 17, 2001, and continuing until she returns to work or until further Order of the Industrial Commission. Any compensation which has already accrued shall be paid to plaintiff in a lump sum, with interest at 8 percent per year from December 10, 2002, the date of the hearing before the Deputy Commissioner. Interest on all compensation due on or before December 10, 2002, will accrue from December 10, 2002 until paid. Interest on compensation due after December 10, 2002, will accrue from the date the individual weekly compensation payment was due until paid.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her injury by accident, including all treatment provided by Dr. Michael Tyner, Rex Hospital, and other health care providers.
3. Defendants shall forward directly to plaintiff's counsel as his fee twenty-five percent (25%) of all back due and future compensation benefits.
4. Defendants shall bear the costs.
This 10th day of April 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
 S/_________________ PAMELA T. YOUNG VICE CHAIRMAN